# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

VONDA LORRAINE ANDREWS,  )
                          )
        Plaintiff,     )
                          )
        v.             )   Case No. CIV-16-89-RAW-SPS
                          )
NANCY A. BERRYHILL,       )
Acting Commissioner of the Social )
Security Administration,[1]  )
                          )
        Defendant.     )

## REPORT AND RECOMMENDATION

The claimant Vonda Lorraine Andrews requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born March 12, 1966, and was forty-nine years old at the time of the most recent administrative hearing (Tr. 473). She earned her GED, and has no past relevant work (Tr. 172, 462). The claimant alleges inability to work since July 1, 2006, due to lumbar, lungs, fibromyalgia, carpal tunnel, osteo-neuropathy, COPD, heart problems, memory issues, osteoarthritis, anxiety, problems with eyesight, and panic attacks (Tr. 171).

**Procedural History**

The claimant first applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on January 31, 2006. Her applications were denied. ALJ David W. Engel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 3, 2009 (Tr. 60-77). The claimant filed a subsequent application for supplemental benefits on November 29, 2010, but her application was denied. ALJ Edward M. Starr held an administrative hearing and again determined the claimant was not disabled, in a written opinion dated November 16, 2011. The Appeals Council denied review, but the Western District of Arkansas reversed his decision in Case No. CIV-12-2292, and remanded with instructions regarding further RFC evaluation of the claimant (Tr. 526-533). On remand,

ALJ Starr held another administrative hearing and again determined the claimant was not disabled, in a written decision dated December 31, 2015 (Tr. 456-463). The Appeals Council again denied review, so ALJ Starr's 2015 written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. § 416.967(b), with the additional limitations of frequent reaching, fingering, and handling bilaterally; frequent operation of hand and foot controls; occasional climbing, balancing, crawling, kneeling, stooping, and crouching; occasionally tolerating hazards, humidity, pulmonary irritants like dust, odors, and temperature extremes; performing simple, routine, repetitive tasks in a setting where interpersonal contact is incidental to the work performed and responding to supervision that is simple, direct, and concrete (Tr. 460). The ALJ concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *i. e.*, price marker, routing clerk, and power screwdriver operator (Tr. 462-463).

### Review

The claimant contends that the ALJ erred in assessing her RFC, by failing to properly account for a consultative examiner's opinion, and by giving too much weight to a one-time physical assessment by a rheumatologist. Because the ALJ does appear to have ignored probative evidence regarding the claimant's severe mental impairments, the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease, affective disorder, personality disorder, cannabis abuse, and fibromyalgia (Tr. 458). The medical evidence related to her mental impairments reveals that the claimant had some mental health treatment through Western Arkansas Counseling & Guidance Center, where she was assessed with bipolar disorder, most recent episode manic, moderate, and personality disorder not otherwise specified, as well as a Global Assessment of Functioning (GAF) score of 52 (Tr. 438-447, 669-675). She, however, did not return for ten months after intake and was discharged from the program (Tr. 675).

On March 23, 2006, Dr. Patricia J. Walz, Ph.D., conducted a mental status examination of the claimant (Tr. 386). She noted that the claimant was "a bit cranky and seemed manic," and that her thinking was circumstantial (Tr. 389). She estimated the claimant had a low average to average IQ, and assessed her with bipolar disorder, most recent episode manic, as well as cannabis abuse and personality disorder with schizoaffective and paranoid traits (Tr. 390). She indicated that the claimant's prognosis without treatment was poor and was guarded to fair with treatment (Tr. 390). She noted the claimant's speech was run-on in nature and tangential, but clear, and that her concentration was significantly impaired by obsessiveness about past perceived wrongs (Tr. 390-391). She noted the claimant had the arithmetic ability to manage funds without assistance, but was too disorganized to actually do so (Tr. 391-392).

On July 24, 2008, Dr. Larry Vaught, Ph.D., conducted a mental diagnostic exam of the claimant. He administered a number of tests, including IQ, and she performed in the average range of intellectual functioning. He further noted that she appeared fairly

independent for activities of daily living, but that she scored in the 27th percentile for concentration, persistence, and pace (Tr. 419-424). He assessed her with depressive disorder, NOS, as well as panic disorder with agoraphobia (Tr. 424). He also completed a mental RFC assessment, in which he indicated she had six moderate limitations, as well as a marked limitation regarding the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 424-426).

On February 24, 2011, Dr. Walz conducted a second mental diagnostic evaluation of the claimant. She noted that the claimant was odd in presentation, mood was anxious, speech was rambling, and thought processes were loosely associated, and that she estimated the claimant had an average IQ (Tr. 336). She assessed the claimant with schizoaffective disorder v. dysthymia, a history of substance abuse reportedly in remission, and borderline personality traits (Tr. 337). She further indicated the claimant had a Global Assessment of Functioning (GAF) score of 45-55 based on a chaotic lifestyle (Tr. 337). She also noted that the claimant's social skills were impaired by her odd presentation and rambling speech, and that although her speech was clear and intelligible, it was also rambling and odd in nature (Tr. 337). She further noted that the claimant's attention and concentration were adequate during the mental status exam, but that she had great difficultly staying on task (Tr. 337). She indicated the claimant may have underreported her substance abuse, and again stated she believed the claimant had the arithmetic skills to handle funds, but that she may need supervision given her chaotic lifestyle and possible thought disorder (Tr. 337).

On March 2, 2011, Dr. Winston Brown completed a mental RFC assessment of the claimant, in which he indicated that she had moderate limitations with regard to, *inter alia*: the ability to carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal work-day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 346). He then stated that the claimant was able to perform work where interpersonal contact is incidental to work performed, *e. g.*, assembly work; that complexity of tasks would be learned and performed by rote, with few variable and little judgment; and that supervision required be simple, direct, and concrete (Tr. 346).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as some of the medical evidence. As to her mental impairments, he noted Dr. Walz's 2011 evaluation at step three, but made no mention of it at step four. At step four, the ALJ noted Dr. Walz's 2006 assessment, and the assessment from Western Arkansas Guidance & Counseling, noting she was discharged for failure to keep her appointment. He then stated that he had considered her limited mental health treatment, daily activities, lack of psychotropic medications, and the GAF of 52, and concluded she could perform simple, routine, repetitive tasks in a setting where interpersonal contact is incidental to the work performed, and that she could respond to supervision that was simple, direct, and concrete (Tr. 462). He then gave great weight to the opinions from the state reviewing physician and Dr. Vaught, without discussing their opinions further (Tr. 462).

The claimant argues that the ALJ erred in his analysis with regard to Dr. Walz's 2011 mental status examination when he wholly omitted it from discussion at step four, and the undersigned Magistrate Judge agrees and notes the ALJ's additional error with regard to his lack of analysis of *any* of the opinions regarding her mental impairments. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a passing summary of Dr. Walz's 2006 assessment, but entirely ignored her very consistent 2011 assessment. Furthermore, he did not provide *any analysis* of either report's findings and prognoses. This was especially important to do with regard the claimant's ability regarding concentration,

persistence, and pace, in light of her repeated references to these problems. Her findings are bolstered by Dr. Vaught's assessment as well, noting that her ability to concentrate was in the 27th percentile. This was a significant omission in that it calls into question the claimant's ability to perform in a work environment, and is indeed reflected by the mental RFC assessments in the record. "[T]he ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ failed to address any of this in his cursory discussion, much less provide an analysis of these findings. *See also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.").

Because the ALJ failed to discuss evidence that was inconsistent with his RFC determination, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand

the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 1st day of March, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**